

**Signed: April 15, 2010**

_____
**LESLIE TCHAIKOVSKY
U.S. Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re                                                    No. 09-42526 T
                                                         Chapter 11
MICHAEL A. GBADEBO,

    Debtor-in-Possession.
_____/

**MEMORANDUM OF DECISION RE CONFIRMATION OF PLAN**

The Modified First Amended Plan of Reorganization (the "Plan") of the above-captioned debtor (the "Debtor") came on for an evidentiary confirmation hearing. The hearing was necessitated by the objection and negative vote on the Plan by Abraham Oshuntola ("Oshuntola"), a judgment creditor.[1] At the conclusion of the

---

[1] One of the Debtor's secured creditors, Wachovia Commercial Mortgage, Inc. ("Wachovia"), also filed an objection to confirmation of the Plan and voted against it. However, at the preliminary confirmation hearing, counsel for Wachovia stated that Wachovia and the Debtor were close to resolving their differences and that the Court could treat its objection as withdrawn and its negative vote changed to an affirmative one if counsel did not appear at the evidentiary hearing. Counsel for Wachovia did not appear at the evidentiary hearing. As a result, the Court finds that Wachovia has withdrawn its objection and voted in favor of the Plan. Thus, the Debtor has satisfied the requirement that at least one impaired class of creditors affirmatively vote in favor of the Plan. See 11 U.S.C. § 1129(a)(10).

hearing, the Court took the matter under submission. For the reasons stated below, the Court now concludes that the Plan may not be confirmed.

**A.   BACKGROUND**

The Debtor is a licensed professional engineer. He is the sole shareholder and Chief Executive Officer of ITC Engineering Services, Inc. ("ITC"), which operates an electrical engineering and testing and consulting laboratory located in Sunol, California. The Debtor owns the real property on which ITC operates (the "Sunol Property"). He also owns a residence in Dublin, California (the "Debtor's House").

According to the Debtor's Disclosure Statement, the Debtor filed the chapter 11 case after Oshuntola obtained a judgment against him and attempted to levy a writ of execution against his stock in ITC. Oshuntola has also recorded an abstract of judgment in Contra Costa County, creating junior liens against the Debtor's real property (the "Real Property Judgment Liens").

The Plan proposes that the Debtor will retain his equity interest in the estate unaltered. It proposes to strip the Real Property Judgment Liens off his real property on the ground that they are unsupported by any value and to treat the underlying debt as a general, unsecured claim. It proposes to pay the holders of general, unsecured claims $100 per month for 60 months for a total of $6,000. The Disclosure Statement estimates that this will provide the holders of general, unsecured claims with approximately 2.6 percent of their claim amounts. The size of Oshuntola's claim, as compared to the

2

holders of other general, unsecured claims, makes Oshuntola's vote on the Plan determinative of the class vote. Oshuntola, and thus the class of general, unsecured claims, Class 8, voted against confirmation of the Plan. As stated above, Oshuntola also filed an objection to the Plan.

**B. OSHUNTOLA'S OBJECTIONS**[2]

Oshuntola's raises four principal objections to confirmation.[3] First, he contends that the Debtor has undervalued the Sunol Property. He contends that, if the Sunol Property were properly valued, the Real Property Judgment Lien could not be stripped off this property, at least not in its entirety. Second, he contends that, in any event, he has a secured claim against the Debtor's personal property by virtue of his service of an order of examination on the Debtor on March 30, 2009. <u>See</u> Cal. Civ. Proc. Code §

---

[2] Oshuntola filed an objection to confirmation on October 26, 2009. Thereafter, the Debtor amended both the Plan and Disclosure Statement. Oshuntola filed a supplemental objection to confirmation on January 15, 2010. Some of the original objections went to the adequacy of the disclosure. The amendments to the Disclosure Statement may have resolved these objections. In any event, the Court is satisfied with the adequacy of disclosure and overrules any remaining objections on that count.

[3] Oshuntola also contended that the Plan was not feasible and was likely to be followed by a liquidation. He noted that the Debtor's projected disposable income was only $100 per month. He argued that this was too small a "cushion to survive the vicissitudes of the economy." This objection is not persuasive. Based on the evidence presented at the evidentiary hearing, the Court is persuaded that the Plan is feasible. Moreover, under the present law, the Debtor will not receive a discharge unless he completes performance of the Plan. 11 U.S.C. § 1141(d)(5). Thus, if the Debtor were unable to perform the Plan, Oshuntola would suffer little prejudice from its having been confirmed.

3

708.110(d). Third, he contends that the Plan is not being proposed in good faith. Fourth, he contends that the Plan does not satisfy 11 U.S.C. § 1129(a)(15). For the reasons set forth below, the first two objections will be overruled. The third and fourth objections will be sustained.

The Debtor testified that the value of the Sunol Property was approximately $850,000. He based this opinion on the fact that a similar property in the vicinity had been listed for some time at a price in this range. As an owner, he is competent to testify as to the value of the Sunol Property. Kestenbaum v. Falstaff Brewing Corp., 514 F.2d 690, 699 (5th Cir. 1975). The Court found the basis for his opinion reasonable.

Oshuntola presented no evidence on the value of the Sunol Property. However, he noted that an appraisal obtained in early 2006 valued the Sunol Property at approximately $1.9 million. He argued that it was not credible that the value of the property would have declined so dramatically. The Court does not agree. The Court is regularly confronted by comparable declines in value in the last few years on its relief from stay calendar. This phenomenon is sufficiently well known and beyond dispute that it is a fact of which the Court may take judicial notice. See Fed. R. Evid. 201(b).

Oshuntola also objected to the Plan's failure to classify his secured claim against the Debtor's personal property: i.e., the Debtor's stock in ITC and a $700,000 debt owed to the Debtor by ITC. Oshuntola based his secured claim against the Debtor's personal property on his service of an order of examination on the Debtor on

4

March 30, 2009.  See Cal. Civ. Proc. Code § 708.110.  This objection may have had merit when it was first asserted.  However, the lien created by § 708.110(d) only lasts for one year unless extended by the court.  Thus, the lien has now expired.[4]

Oshuntola also contended that the Plan was not filed in good faith, because the Debtor proposed to pay over $1,200 per month for two vehicles and over $6,000 on his home mortgage while paying only $100 per month to the holders of general, unsecured claims.  This objection is overruled in part and sustained in part.  The Court is persuaded that the payments on the Mercedes are reasonable.  The Debtor testified persuasively that he maintained the Mercedes primarily for business purposes and that it generated income substantially in excess of the proposed monthly payment.

However, the Court finds the proposed payments on the Jetta and the Debtor's House unreasonable, at least given the minimal payment proposed to the holders of general, unsecured claims.  The Debtor's House is a four bedroom house, in which the Debtor now lives alone and in which he has no equity.  He testified that he would like to retain it because he has owned it a long time, he raised his children there, and he finds it useful for entertaining his European clients.  The Court finds these reasons insufficient given the minimal amount of the proposed payment to the holders of general, unsecured claims.

The proposed payments on the Jetta are also in bad faith. The Debtor testified that the Jetta was being driven by his college-age

---

[4]The Court does not read 11 U.S.C. § 108 as extending this period.

5

daughter who would graduate soon and would then begin making the payments herself. Yet, the Plan proposed that the Debtor would make payments on this car for 60 months. The Debtor also testified that he had been paying $700 per month for his daughter's apartment and that this payment would soon cease. Presumably, this expense was used to calculate the Debtor's disposable income. If these payments were eliminated, the Debtor would be able to increase the monthly payments to the Class 8 creditors to $1,000 per month, resulting in a dividend of 26 percent, rather than 2.6 percent. As presently formulated, the Court finds the Plan in bad faith.

Finally, the Court also finds persuasive Oshuntola's contention that the Plan cannot be confirmed because the Debtor has manipulated his reported income. Section 1129(a)(15) provides that, if the holder of a general, unsecured claim objects to the plan, the plan must either pay the claim holder in full, or the debtor must pay all creditors an amount equal to the value of his projected disposable income for a five year period.

The Debtor correctly notes that this requirement goes to the amount paid to all creditors under the Plan, not just to the Class 8 creditors or just to the creditor who objects to the plan. He notes that his statement of income and expenses showed a negative number. However, in order to find that 11 U.S.C. § 1129(a)(15) has been satisfied, the Court must be persuaded that the Debtor's financial information is credible. The Court is unable to do so.

The Debtor's testimony at trial persuaded the Court that the Debtor uses ITC as his personal "piggy bank," drawing money from it

6

or causing it to pay his personal expenses as needed and failing to maintain its corporate separateness. Thus, the Court believes that the Debtor's calculation of his income and expenses is unreliable at best. The Debtor bears the burden of proof on this issue and has failed to satisfy it. As a result, for this reason as well, the Plan may not be confirmed.

**C. THE "ABSOLUTE PRIORITY" RULE AFTER BAPCPA**

The Court also concludes that the Plan may not be confirmed because it does not satisfy the "absolute priority" rule pursuant to 11 U.S.C. § 1129(b)(2)(B).[5] In reaching this conclusion, the Court differs with the views expressed in several recent decisions and by several learned treatises. The Court does not do so lightly.

Prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), 11 U.S.C. § 1129(b)(2)(B) stated that, if an impaired class of unsecured claims voted against a plan, the plan could not be confirmed unless the court found that it was "fair and equitable." "Fair and equitable" meant, at a minimum, that either the class would receive property with a present value equal to its claim or no one with a claim or interest junior to the class of unsecured claims would retain any property.[6] This

---

[5] Oshuntola did not object to confirmation on this ground. However, the Court has an independent duty to confirm a plan only if satisfies the requirements of the Bankruptcy Code. In re Great Northwest Recreation Center, Inc., 74 B.R. 846, 852 (Bankr. D. Mont. 1987).

[6] Courts differed as to whether an individual debtor could retain exempt property without violating the "absolute priority" rule. See In re Bullard, 358 B.R. 541, 544-45 (Bankr. D. Conn. 2007)(holding that the debtor could retain exempt property because

7

provision applied to both individual debtors and debtors that were entities. This provision is generally referred to as the "absolute priority" rule.

BAPCPA modified the "absolute priority" rule as applied to individual debtors. Section 1129(b)(2)(B)(ii) now states that a plan may be "fair and equitable" even though the debtor retains "property *included in the estate under* section 1115...."[7] 11 U.S.C. § 1129(b)(2)(B)(ii)(emphasis added). Section 1115 is a new provision, also added by BAPCPA. It states as follows:

> (a) In a case in which the debtor is an individual, property of the estate *includes,* in addition to the property specified in section 541–
> *(1) all property of the kind specified in section 541 that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13, whichever occurs first; and*
> *(2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13, whichever occurs first.*
>
> (b) Except as provided in section 1104 or a confirmed plan or order confirming a plan, the debtor shall remain in possession of all property of the estate.

11 U.S.C. § 1115 (emphasis added).

Three bankruptcy courts have issued decisions concluding that §§ 1129(b)(2)(B)(ii) and 1115 should be read to have eliminated the "absolute priority" rule for individual chapter 11 debtors. <u>See</u> <u>In</u>

---

it was not property of the estate).

[7]The modification concludes with the phrase "subject to the requirements of subsection (a)(14) of this section." Subsection (a)(14) deals with domestic support obligations. This limitation has no relevance to the instant case.

8

re Tegeder, 369 B.R. 477 (Bankr. D. Neb. 2007); In re Roedemeier, 374 B.R. 264 (Bankr. D. Kan. 2007) and, most recently, In re Shat, 2010 WL 702443 (Bankr. D. Nev.). The first case, Tegeder, does not contain an extensive analysis of the issue. After quoting the language of 11 U.S.C. §§ 1129(b)(2)(B) and 1115, the Tegeder court merely stated that, because § 1115 makes reference to § 541, § 1129(b)(2)(B) clearly means that a debtor can retain both pre- and post-petition property under a plan rejected by his unsecured creditors. In reaching this conclusion, the Tegeder court appears to have relied primarily on the conclusions espoused in several bankruptcy law treatises. See In re Tegeder, 369 B.R. at 480.[8]

The Roedemeier court found the language of 11 U.S.C. § 1115 ambiguous. It observed that the statutory language could be interpreted either narrowly, permitting the debtor to retain only property acquired post-petition (the "debtor's post-petition property"), or broadly, to permit the debtor to also retain property owned when he filed his bankruptcy petition (the "debtor's pre-petition property"), thus eliminating the "absolute priority" rule as applied to individual debtors. To resolve this ambiguity, the Roedemeier court attempted to determine the intent of Congress. In re Roedemeier, 374 B.R. at 274.

---

[8] The commentators cited by the Tegeder court are Hon. William L. Norton, Jr., 4 *Norton Bankruptcy Law & Practice 2d* § 84A:1; Hon. W. Homer Drake, Jr. *Bankruptcy Practice for the General Practitioner* § 12:27 n. 28; and Rosemary E. Williams, 3 *Bankruptcy Practice Handbook* § 14:152 n. 1 (2d ed.). In re Tedgeder, 369 B.R. at 480.

9

The Roedemeier court found no relevant legislative history. It noted that the Supreme Court's ruling on "new value" in Ahlers made it particularly difficult for an individual debtor to confirm a chapter 11 plan over the negative vote of its unsecured creditors. See Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 202-06 (1988). It also noted that BAPCPA had made a number of changes to chapter 11 "so that it could function for individual debtors much like Chapter 13 does." Roedemeier, 374 B.R. at 264. In chapter 13, there is no "absolute priority" rule. It opined that the other changes made by BAPCPA would make no sense if § 1115 is read to permit the vote of unsecured creditors to prevent confirmation of an individual debtor's plan. For that reason, it concluded that the intent of Congress was that the statutory language of §§ 1129(b)(2)(B)(ii) and 1115 be read broadly. Id. at 264-65.

The Shat case contained an even lengthier analysis. It began with a detailed examination of BAPCPA's legislative history. Like the Roedemeier court, it found nothing helpful there. It noted several references to Congress's intent to include an individual debtor's post-petition income in the bankruptcy estate, but no references to its intent to eliminate the "absolute priority" rule as applied to individuals. In re Shat, at *3-4. It then summarized the changes to chapter 11 made by BAPCPA that were designed to make an individual chapter 11 case more like a chapter 13 case. Id. at *4-5.

The Shat court then turned to the relevant statutory language of §§ 1129(b)(2)(B)(ii) and 1115. It began by stating that it found

10

found ambiguous the following phrase contained in § 1129(b)(2)(B)(ii): i.e., "property included in the estate under section 1115." It noted that, if "included" means added to the bankruptcy estate already established by § 541, then § 1115 should be read narrowly, as permitting the debtor only to retain post-petition property.[9] However, it opined that "included" could also mean "referenced." Id. at *5. Section 1115 *references* the debtor's pre-petition property in the phrase "in addition to the property specified in section 541." As a conceptual matter, the Shat court theorized that § 1115 "absorbed" and then "superseded" section 541, so that both pre- and post-petition property were "included" in the bankruptcy estate by § 1115. Id. at *7. As a result, the "absolute priority" rule was eliminated for individual chapter 11 debtors. Id. at *5.[10]

The Shat court acknowledged that this reading of §§ 1129(a)(2)(B)(ii) and 1115 was convoluted. However, it considered the argument in favor of this reading to be powerful. This argument was that Congress intended to make individual chapter 11 cases more like chapter 13 cases and that there is no "absolute priority" rule in chapter 13 cases.

---

[9] The Shat court observed that this narrow reading of § 1129(b)(2)(B)(ii) is even narrower than it first appears. While the debtor is permitted to retain his post-petition income, he is also required to devote his post-petition income to making plan payments. See 11 U.S.C. § 1123(a)(8); In re Shat, at *6.

[10] The Shat court then discusses the "plain meaning" doctrine. The relevance of this decision is unclear since the Shat court appears to acknowledge, both before and after this discussion, that the language is ambiguous.

11

Notwithstanding the thorough and thoughtful analysis by the Shat court, the Court is unable to agree with its conclusion. If the Court were writing on a clean slate, it would view the language of § 1129(b)(2)(B)(ii) as unambiguous. The Court would read the phrase "included in the estate under section 1115" to be reasonably susceptible to only one meaning: i.e., added to the bankruptcy estate by § 1115.

Section 103(a) provides that § 541 applies in a chapter 11 case, including an individual chapter 11 case. Section 541 provides that, when a petition is filed, a bankruptcy estate is created, consisting of the debtor's pre-petition property. Section 1115 provides that, in an individual chapter 11 case, in addition to the property specified in § 541, the estate includes the debtor's post-petition property. If the clause referring to § 541 had not been included in § 1115 and if § 1115 had merely stated that an individual chapter 11 debtor's estate included post-petition property, the argument could have been made that an individual chapter 11 debtor's estate did not include his pre-petition property.

The Court does not find the other provisions added by BAPCPA, designed to make individual chapter 11 cases mores like chapter 13 cases, persuasive evidence that Congress intended to eliminate the "absolute priority" rule as to individual debtors. Each one of these new provisions appears designed to impose greater burdens on individual chapter 11 debtor's rights so as to ensure a greater payout to creditors. This was a frequently expressed overall purpose of BAPCPA: i.e., to ensure that debtors who can pay back a portion

12

of their debts do so. H.R. Rep. No. 109-31, pt. 1, at 2 (2005). No one who reads BAPCPA as a whole can reasonably conclude that it was designed to enhance the individual debtor's "fresh start."

The Shat court asserts that the "absolute priority" rule makes it virtually impossible for an individual chapter 11 debtor to confirm a plan that does not provide for payment in full to the holders of unsecured claims. To the contrary, such a plan may be confirmed if the holders of such claims vote in favor of the plan. They are likely to do so if a reasonable dividend is proposed, and they conclude that they will receive no dividend in a chapter 7 case.

Finally, if §§ 1129(b)(2)(B)(ii) and 1115 are read to eliminate the "absolute priority" rule for individual chapter 11 debtors, the Court is faced with a procedural anomaly. If the plan proposes to pay them anything, the debtor is required to send them a ballot. Yet, their vote can be ignored. This makes no sense. The Court reads §§ 1129(b)(2)(B)(ii) and 1115 to eliminate the "absolute priority" rule only as to an individual chapter 11 debtor's post-petition property. It bases this conclusion on both the language of the statute, both in isolation and viewed in the context of the Bankruptcy Code as a whole. It finds this reading most consistent with the intent of Congress as expressed in the legislative history.

**CONCLUSION**

The Plan may not be confirmed. Oshuntola's objections to feasibility, to the valuation of the Sunol Property, and to the Debtor's failure to classify his claim as a claim secured by the Debtor's personal property are overruled. His objection to

13

confirmation on good faith grounds is sustained in part and overruled in part. Oshuntola's objection to the Debtor's failure to satisfy 11 U.S.C. § 1129(a)(15) is also sustained. Finally, the Court concludes that, based on its reading of 11 U.S.C. § 1129(b)(2)(B)(ii) and 1115, the Plan does not satisfy the "absolute priority" rule, which still applies to some extent to individual chapter 11 debtors. Counsel for Oshuntola is directed to submit a proposed form of order in accordance with this decision.

END OF DOCUMENT

COURT SERVICE LIST

Michael A. Gbadebo
3229 Colebrook Lane
Dublin, CA 94568

Lawrence L. Szabo
Law Offices of Lawrence L. Szabo
3608 Grand Ave. #1
Oakland, CA 94610-2024

Mark S. Bostick
Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24th Floor
Oakland, CA 94607-4036